UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA L. CRUISE-GULYAS,

      Plaintiff,

v.

MATTHEW W. MINARD,

      Defendant.

Case No. 18-cv-11169

Hon. Paul D. Borman
District Court Judge

Hon. Elizabeth A. Stafford
Magistrate Judge

_____/

| | |
|---|---|
| Blackstone Law, PLLC | Howard & Howard Attorneys, PLLC |
| Hammad A. Khan (P80039) | Mark W. Peyser (P35473) |
| Counsel for Cruise-Gulyas | Jonathan F. Karmo (P76768) |
| 1 Ajax Drive, Ste 101 | Counsel for Minard |
| Madison Heights, MI 48071 | 450 W. 4th Street |
| P: (248) 951-8111 | Royal Oak, MI 48067 |
| F: (248) 418-8326 | P: (248) 723-0356 |
| hkhan@blackstonelawpllc.com | mwp@h2law.com |

_____/

**Plaintiff's Response Opposing Defendant's Motion for
Entry of Judgment on the Pleadings**

     Plaintiff Debra Cruise-Gulyas ("Cruise") through counsel of record Attorney Hammad A. Khan, opposes Defendant Minard's ("Minard") Rule 12(c) motion because "driver disrespect" is not a constitutionally valid reason for a police officer to stop a motor vehicle.

    1.  The crux of Minard's argument is that once a police officer gives leniency by ticketing the driver of a motor vehicle for a lesser offense than the reason for

the original traffic stop, the officer retains unfettered discretion to stop the driver again at any time, to amend the citation into the original violation.

2.   This Court should disagree because sanctity of the fundamental rights at stake—freedom of expression and liberty—are not subordinate to the subjective whims of a police officer that changes his or her mind about a driver given a break.

3.   Display of the raised middle finger toward a police officer—after receiving a ticket and driving away from a traffic stop—falls squarely within the purview of the constitutional protections afforded to symbolic expression because the centuries old gesture conveys a well-understood meaning of malcontent.

4.   Stopping Cruise, a second time—within minutes of the first—to amend the nonmoving zero-point citation into a moving one with more severe penalties, only because she exercised the constitutionally protected right to symbolically communicate a message affronting Minard's dignity is the epitome of adverse action, motivated by a desire to punish that would deter a person of ordinary firmness from exercising the right.

5.   Accepting the well-pleaded factual allegations in the complaint as true and in a light most favorable to the nonmoving party, Minard violated clearly established constitutional rights under the First Amendment when he retaliated against Cruise for what he describes as her being "disrespectful."

6.  Accepting the well-pleaded factual allegations in the complaint as true and in a light most favorable to the nonmoving party, Minard further violated clearly established constitutional rights under the Fourth Amendment by stopping Cruise the second time, without probable cause or reasonable suspicion.

7.  There is no continuing violations doctrine for traffic offenses and once Minard stopped Cruise, releasing her on a ticket the event concluded; unless there was another violation he could not invade her fundamental liberty interests by seizing her again for being disrespectful.

8.  Viewing the factual allegations in the complaint as true and in a light most favorable to the nonmoving party, qualified immunity is inapplicable because Minard could not reasonably believe he was acting within the scope of his authority by stopping Cruise the second time based on driver disrespect, i.e., only for her exercising symbolic expression with a gesture conveying an unflattering message.

## Relief Requested

For the foregoing reasons, fully articulated in the incorporated supporting brief, this Court should deny entry of judgment on the pleadings.  Accepting the well-pleaded factual allegations as true and in a light most favorable to Cruise, the amend complaint raises plausible claims that Minard violated clearly established constitutional rights of which a reasonable person would have known.

3

Respectfully submitted,

    /s/ Hammad A. Khan    
Hammad A. Khan (P80039)
Counsel for Plaintiff
1 Ajax Drive, Ste 101
Madison Heights, MI 48071
Dated: July 2, 2018          P: (248) 951-8111
hkhan@blackstonelawpllc.com

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

DEBRA L. CRUISE-GULYAS,

        Plaintiff,

v.

MATTHEW W. MINARD,

        Defendant.

_____/

Case No. 18-cv-11169

Hon. Paul D. Borman

District Court Judge

Hon. Elizabeth A. Stafford

Magistrate Judge

**Brief in Support of Plaintiff's Response
Opposing Defendant's Motion for Entry of
Judgment on the Pleadings**

# Table of Contents

Index of Authorities ........................................................................... iii

Counterstatement of Issues Presented ................................................... 1

Controlling Authority .......................................................................... 2

I.   Introduction ................................................................................ 3

II.  Counterstatement of Facts ........................................................... 4

III. Rule 12(c) Standards .................................................................. 5

IV. Arguments .................................................................................. 6

    A. The First Amendment protects symbolic gesture communicating a
       message even one that is crude, distasteful, or as Minard says
       "disrespectful" ............................................................................ 6

       1. Standards of Review ............................................................. 6

       2. Gesturing a raised middle finger is an ancient form of
          expression conveying a well-understood meaning that falls
          under the umbrella of First Amendment speech ...................... 6

       3. Stopping Cruise again to amend the zero-point traffic ticket
          into one with points because she symbolically communicated
          an idea that affronted Minard is adverse action that could quell
          others from exercising the right ............................................. 8

       4. There is a causal connection between the adverse action taken
          by Minard and his motivation to punish Cruise for her exercise
          of protected constitutional rights .......................................... 10

    B. Stopping a motor vehicle, without probable cause or reasonable
       suspicion is a violation of clearly established constitutional rights
       under the Fourth Amendment .................................................... 13

       1. Standards of Review ........................................................... 13

       2. Once Minard wrote Cruise a ticket and released her from the
          scene, he needed either probable cause or reasonable suspicion for
          the second traffic stop ......................................................... 14

    C. Qualified immunity does not shield Minard from liability because a
       reasonable officer would know he cannot stop a motor vehicle, just
       because the driver displays a symbolic gesture communicating
       disagreement ............................................................................ 15

     1.  Standards of Review ............................................................15

     2.  The contours of the First and Fourth Amendment were sufficiently clear that a reasonable official in Minard's position, would understand what he is doing violates those rights ................................16

  D.  Minard mischaracterizes the standard for substantive due process because "shocks the conscience" is only one part ......................................17

     1.  Standards of Review ............................................................17

     2.  Minard's retaliatory action by seizing Cruise's person and vehicle interfered with rights implicit in concepts of ordered liberty ................18

V.  Conclusion .......................................................................................21

# Index of Authorities

<u>Case Law</u>

*Anderson v. Creighton,*
  483 U.S. 635, 640 (1987)............................................................................17

*Bazzi v. City of Dearborn,*
  658 F.3d 598, 603 (6th Cir. 2011)..............................................................14

*Brockway v. Shepherd,*
  942 F. Supp. 1012, 1017 (M.D. Pa. 1996) .................................................8

*Burnham v. Ianni,*
  119 F.3d 668, 674 (8th Cir. 1997) (en banc) .............................................5

*Cockrel v. Shelby County Sch. Dist.,*
  270 F.3d 1036, 1048 (6th Cir. 2001)..........................................................6

*Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro,*
  477 F.3d 807, 822 (6th Cir. 2007)........................................................10, 13

*Duran v. City of Douglas, Ariz.,*
  904 F.2d 1372, 1378 (9th Cir. 1990) .........................................................8

*Freeman v. State,*
  805 S.E.2d 845, 850–51 (Ga. 2017)............................................................7

*Gaddis ex rel. Gaddis v. Redford Tp.,*
  364 F.3d 763, 769 (6th Cir. 2004)............................................................14

*Greer v. City of Highland Park, Michigan,*
  884 F.3d 310, 316 (6th Cir. 2018)..................................................6, 14, 16

*Harlow v. Fitzgerald,*
  457 U.S. 800, 818–19 (1982)......................................................................5

*Illinois v. Caballes,*
  543 U.S. 405, 407 (2005)......................................................................14, 15

*Nichols v. Chacon,*
  110 F. Supp. 2d 1099, 1101, 03–04, 10 (W.D. Ark. 2000)........................8

*O'Brien v. Borowski*, 961 N.E.2d 547, 558–59 (Mass. 2012),
  abrogated by *Seney v. Morhy*, 3 N.E.3d 577 (Mass. 2014)......................7

*Reilly v. Vadlamudi,*
  680 F.3d 617, 623 (6th Cir. 2012).............................................................6

*Rodriguez v. U.S.*,
 ___ U.S. ___; 135 S. Ct. 1609, 1614 (2015) ........................................................15

*Sandul v. Larion*,
 119 F.3d 1250, 1254 (6th Cir. 1997) ...............................................................7, 8

*Swartz v. Insogna*,
 704 F.3d 105, 110 (2d Cir. 2013) ..........................................................................7

*Thaddeus-X v. Blatter*,
 175 F.3d 378, 397-98 (6th Cir. 1999) ....................................................................9

*U.S. v. Sanford*,
 476 F.3d 391, 394 (6th Cir. 2007) ...............................................................14, 15

*Washington v. Glucksberg*,
 521 U.S. 702, 720-21 (1997) ................................................................................19

*Wegener v. City of Covington*,
 933 F.2d 390, 392 (6th Cir. 1991) .........................................................................5

*Wilson v. Layne*,
 526 U.S. 603, 609 (1999) ......................................................................................16

*Wilson v. Martin*,
 549 Fed. Appx. 309, 311 (6th Cir. 2013) ............................................................7

<u>Other Authority</u>

First Amendment ................................................................................................passim

Fourth Amendment ...........................................................................................passim

Fourteenth Amendment ...........................................................................................18

Fed. R. Civ. P. 8(d)(3)...............................................................................................19

## Counterstatement of Issues Presented

1. Whether a motor vehicle driver's gesture displaying a raised middle finger at a police officer, when driving away from a traffic stop is symbolic expression entitled to First Amendment protection?

2. Whether a police officer violates clearly established constitutional rights under the First and Fourth Amendments, when he seizes a moving motor vehicle only because the driver displays a raised middle finger out the window driving away from a traffic stop?

3. Whether a reasonable official would have known that he acted outside the scope of his authority by stopping a motor vehicle for driver disrespect?

## Controlling Authority

Fed. R. Civ. P. 12(c)

## I. Introduction

Minard, respectfully, mischaracterizes the underlying material facts.  The first traffic stop for speed is not in issue here but rather, what happened afterwards.  The first traffic stop ended when Minard released Cruise from the scene with a traffic ticket for impeding traffic.  While driving away, Cruise expressed her dissatisfaction by conveying a message to Minard using a centuries old symbolic gesture communicating a well-understood meaning: a raised middle finger out of the driver's side window, with nothing more.  No fighting words or officer safety concerns because Cruise was in a separate motor vehicle driving away.

In response to the symbolic middle-finger gesture, labeled by Minard as "disrespectful," he stopped Cruise a second time to "retract leniency."  Minard intended to amend the just issued zero-point violation, into one with points for speeding.  The second stop was retaliatory in nature, meant to punish Cruise for exercising protected First Amendment freedoms.  Allowing police to stop a motor vehicle based on driver disrespect would deter a reasonable person from exercising the right to symbolic expression because few drivers look forward to viewing flashing blue lights from a police vehicle in their rearview mirror.  Qualified immunity does not apply, because a reasonable person would know driver disrespect is not a valid reason for a traffic stop.

## II. Counterstatement of Facts

Cruise adopts in part Minard's statements of fact.  Cruise agrees that (1) Minard stopped her the first time for speeding, (2) issued her a zero-point ticket for impeding traffic instead of speeding, (3) speeding has points, and (4) she displayed her middle figure out the driver side window while driving away from the first traffic stop.  **(Doc. 10, Page ID 78, 79, Mot. Entry Judg. Plead.)**  Cruise further agrees that (1) Minard released her from the first traffic stop after issuing the impeding traffic ticket and (2) stopped her again within a short distance to amend the zero-point ticket into a point ticket for speeding.  (*id.* **at Page ID 90, 91, 92, 100, 105.)**  But from there Cruise parts company.

Minard incorrectly states at least 11 different times that he cited Cruise for speeding.  (*id.* **at Page ID 79, 90, 91, 92, 95, 96, 97, 99, 103, 104.)**   Minard further misstates at least eight different times that Cruise admitted speeding.  (*id.* **at Page ID 79, 90, 93, 95, 96, 97, 100, 103.)**  Minard also incorrectly states the amended complaint pleads Minard did change the impeding traffic ticket into one for speeding.  (*id.* **at Pg ID 92.)**

Nowhere in the amended complaint does Cruise admit speeding or receiving a speeding ticket.  **(Doc. 6, Amended Complaint.)**  In fact, the amended complaint only uses the word "speed" twice: once when identifying the reason for the first traffic stop and once to illustrate the adverse action taken.  (*id.* **at Page ID 4 ¶ 13,**

5 ¶ 19.)  The amended complaint pleads Minard stopped Cruise the second time

"so that he could amend the charge …"  (*id.* **at Page ID 35 ¶ 19.)**  It does not say

that Minard actually amended the ticket into speeding because the state court

public record shows otherwise.[1]

### III. Rule 12(c) Standards

Cruise adopts Minard's statement of the legal standards applicable to a Rule

12(c) motion for entry of judgment on the pleadings because it is correct but

nevertheless, incomplete.  Missing are the burdens of proof.

Minard "bears the initial burden of presenting facts that if true, would

establish that he was acting within the scope of discretionary authority." *Wegener*

*v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991); *Burnham v. Ianni*, 119

F.3d 668, 674 (8th Cir. 1997) (en banc) (Defendant bears the burden of proving

that the plaintiffs' First Amendment rights were not clearly established.); *Harlow*

*v. Fitzgerald*, 457 U.S. 800, 818–19 (1982) (defense sustained if pleading official

can prove).  Cruise has the burden of showing Minard has no entitlement to

qualified immunity.  *Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012).

---

[1] According to the state courts public website, Minard issued Cruise an impeding traffic ticket on June 1, 2017, which she paid on June 16, 2017.  See Michigan Courts, *One Court of Justice*, https://micourt.courts.michigan.gov/CaseSearch/Case/D23/Detail?caseId=17TA16979&CourtType=D&courtNumber=230&locationNumber=0&courtSystem=1&partyTypeNumber=D01&caseType=OI&petitionNumber=(last accessed July 26, 2018)

## IV. Arguments

**A. The First Amendment protects symbolic gesture communicating a message even one that is crude, distasteful, or as Minard says "disrespectful."**

1. *Standards of Review*

De novo review applies to the district court's decision on a motion under Rule 12(c) based on qualified immunity and whether the complaint alleges violation of a clearly established constitutional right. *Greer v. City of Highland Park, Michigan*, 884 F.3d 310, 314 (6th Cir. 2018).

2. *Gesturing a raised middle finger is an ancient form of expression conveying a well-understood meaning that falls under the umbrella of First Amendment speech.*

For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Greer*, 884 F.3d at 316 (internal citation omitted). An action's unlawfulness can be apparent from direct holdings, from specific examples described as prohibited, or from the general reasoning used by a court. *Id.* To prove that a right was clearly established the claimant can draw from Supreme Court precedent, precedent from this court, or cases from other courts, which unmistakably point to the unconstitutionality of the conduct. *Sandul v. Larion*, 119 F.3d 1250, 1254 (6th Cir. 1997).

There is a wealth of existing precedential and persuasive authority

6

establishing display of a raised middle finger is a form of expression protected by the First Amendment.  See, e.g., *Freeman v. State*, 805 S.E.2d 845, 850–51 (Ga. 2017) (Accordingly, Freeman's raised middle finger constituted a constitutionally protected expression, and he could not be found guilty of disorderly conduct … based on having made the gesture in the manner that he did.); *Swartz v. Insogna*, 704 F.3d 105, 110 (2d Cir. 2013) (giving the middle finger is an ancient gesture of insult that is not the basis for reasonable suspicion of a traffic violation or impending criminal activity); *Wilson v. Martin*, 549 Fed. Appx. 309, 311 (6th Cir. 2013) (unpublished) (11-year-old girl gesturing raised middle fingers toward an adult male police officer was crude, not criminal and the officers were patently without probable cause to arrest her for it); *O'Brien v. Borowski*, 961 N.E.2d 547, 558–59 (Mass. 2012), abrogated by *Seney v. Morhy*, 3 N.E.3d 577 (Mass. 2014) (We recognize that the raising of the middle finger as a form of insult has a long, if not illustrious, history dating back to ancient Greece … [l]ike its verbal counterpart, when it is used to express contempt, anger, or protest, it is a form of expression protected by the First Amendment.); *Nichols v. Chacon*, 110 F. Supp. 2d 1099, 1101, 03–04, 10 (W.D. Ark. 2000) (Gesturing in the manner described ["flipping off a state trooper"] … was communicative conduct and is analyzed just as if Nichols had spoken the words "f *** you."  It was crude, insensitive, offensive, and disturbing to [the trooper's] sensibilities … did not constitute

"fighting words," and was protected as "free speech" under the First Amendment to the United States Constitution.); *Sandul*, 119 F.3d at 1256 (internal brackets and quotations omitted) (These cases should leave little doubt in the mind of a reasonable officer that the mere words and gesture "f—k you" are constitutionally protected speech. State employees may not rely on their ignorance of even the most esoteric aspects of the law to deny individuals their constitutional rights.); *Brockway v. Shepherd*, 942 F. Supp. 1012, 1017 (M.D. Pa. 1996) (The use of profane or vulgar language is protected by the First Amendment unless some exception to the general protection applies.… The same principle applies to the use of a gesture [middle finger to show disrespect] which represents profane or vulgar language … [absent] an exception to the general protection of speech.); *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990) (Thus, while police, no less than anyone else, may resent having obscene words and gestures directed at them, they may not exercise the awesome power at their disposal to punish individuals for conduct that is not merely lawful, but protected by the First Amendment.).  Thus, for at least 18 years there has been little doubt that Cruise engaged in constitutionally protected activity gesturing her raised middle finger.

3. *Stopping Cruise again to amend the zero-point traffic ticket into one with points because she symbolically communicated an idea that affronted Minard is adverse action that could quell others from exercising the right.*

8

The next issue is evaluating Minard's response to Cruise's exercise of the right. This Court measures whether it is plausible that Minard's quid pro quo could "chill or silence a person of ordinary firmness from exercising the right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 397-98 (6th Cir. 1999). Cruise says it could and this Court should agree for the following reasons.

Minard concedes that he stopped Cruise the second time because she was "disrespectful." **(Doc. 10, Page ID 90, 93.)** Which is just another way of saying Cruise affronted his dignity by displaying her raised middle finger out of the driver's side window in disagreement with receiving the impeding traffic ticket. The parties appear to agree on the sequence of events foregoing the second traffic stop. The only divergence that does not affect the outcome seems to be in the language used to describe the occurrence: "conveying a message with a gesture" versus "driver disrespect."

Viewed in context, Minard stopped Cruise the second time without reasonable suspicion or probable cause, which is an unconstitutional seizure adversely interfering with fundamental liberty interests. *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 822 (6th Cir. 2007) (deprivation of one's liberty of movement can hardly be classed inconsequential). Moreover, Minard concedes the reason for the second stop was to punish Cruise—amend the no-point citation into one with points—for engaging in the protected activity,

9

which "could deter a person of ordinary firmness from exercising protected conduct." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583–84 (6th Cir. 2012) (brackets omitted).

Finally, common sense controls.  Reasonable people generally disfavor seeing a police car with flashing blue lights in the review mirror.  The experience is unsettling to say the least, intimidating, embarrassing, time consuming, costly, and may require a public court appearance.  It seems logical to infer that Minard's action against Cruise—stopping her the second time to amend the preceding impeding ticket into one with more severe penalties—solely because she was disrespectful is enough to chill others from expressing disagreement with Minard or other police officers, at least in the City of Taylor.  No one welcomes being the intended target of a traffic stop; especially, when exercise of the protected right induces a second traffic stop and colloquy with police, moments after being released from the first with a ticket.  So much for gesturing disagreement.

Thus, this Court should find that Minard took adverse action against Cruise in retaliation for exercise of a protected right or hold sufficiency is a question of fact.  See *Wurzelbacher*, 675 F.3d at 583-84 (whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact).

4. *There is a causal connection between the adverse action taken by Minard and his motivation to punish Cruise for her exercise of protected constitutional rights.*

10

The last inquiry has two subparts for a viable First Amendment retaliation claim: (1) the adverse action was proximately caused by an individual defendant's acts and (2) the individual taking those acts was motivated in substantial part by a desire to punish an individual for exercise of a constitutional right. *King v. Zamiara*, 680 F.3d 686, 695 (6th Cir. 2012) (citation and quotations omitted). Government officials in general, and police officers, may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. *McCurdy v. Montgomery County, Ohio*, 240 F.3d 512, 520 (6th Cir. 2001). Surely, anyone who takes an oath of office knows—or should know— that much. *Id.* Temporal proximity alone may be significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive. *Muhammad v. Close*, 379 F.3d 413, 417–18 (6th Cir. 2004).

There is direct evidence of causation here for three primary reasons. First, there is no dispute that Minard's acts were the proximate cause of the adverse action against Cruise that resulted in property damage and personal injury. He was the police officer that stopped Cruise the first time and issued her the impeding traffic ticket. He was also the one that immediately executed the second traffic stop, when Cruise drove away from the first displaying her raised middle finger out of the driver's side window expressing discontent with receiving the impeding

traffic ticket.  And he was the officer that rear ended her motor vehicle, while retaliating against exercise of the protected right.

Second, there is no dispute regarding motive.  Minard concedes he stopped Cruise the second time to amend the zero-point impeding traffic ticket into a point ticket for speeding.  Such action by Minard, solely in response to Cruise's symbolic gesture, meets the text book definition of a desire to punish her for perceived slights to his dignity.

Third, the temporal proximity alone—second traffic stop occurring instantaneously with exercise of the protected right—should be significant enough here to infer retaliatory motive.  *Muhammad v. Close*, 379 F.3d at 417.

Finally, Minard "can[not] demonstrate that [he] would have taken the same action in the absence of the protected activity."  *Ctr. for Bio-Ethical Reform, Inc.*, 477 F.3d at 821.  Absent Cruise displaying her raised middle finger out of the driver side door, Minard would not have stopped her to amend the ticket from impeding traffic into speeding.  Minard's perception of disrespect and thanklessness from receiving the symbolic gesture is the only reason given for the second traffic stop.  Thus, accepting the well-pleaded factual allegations as true and in a light most favorable to Cruise, the amend complaint raises a plausible claim that Minard violated clearly established constitutional rights under the First Amendment by retaliating against Cruise for symbolically expressing disagreement

12

with a police officer.

### B. Stopping a motor vehicle, without probable cause or reasonable suspicion is a violation of clearly established constitutional rights under the Fourth Amendment.

1. *Standards of Review*

As stated above, de novo review applies to the district court's decision on a motion under Rule 12(c) based on qualified immunity and whether the complaint alleges violation of a clearly established constitutional right. *Greer*, 884 F.3d at 314.

2. *Once Minard wrote Cruise a ticket and released her from the scene, he needed either probable cause or reasonable suspicion to stop her again.*

The Fourth Amendment protects against unreasonable seizures, and a vehicle stop by a police officer is a "seizure" within the meaning of the Fourth Amendment. *Bazzi v. City of Dearborn*, 658 F.3d 598, 603 (6th Cir. 2011) (citation omitted). Police may make a stop when they have probable cause to believe a civil traffic violation has occurred, *U.S. v. Sanford*, 476 F.3d 391, 394 (6th Cir. 2007), or reasonable suspicion that occupants of a vehicle are engaged in criminal activity. *Gaddis ex rel. Gaddis v. Redford Tp.*, 364 F.3d 763, 769 (6th Cir. 2004).

Here, Minard does not even try to show that probable cause or reasonable

suspicion developed after completing the first traffic stop because it did not. Instead, he argues probable cause to stop Cruise the first time for speeding, extended to provide justification for the second stop. **(Doc. 10, Page ID 101.)** Such an argument, however, is unpersuasive because the right to seize Cruise for speeding ended when Minard completed the mission releasing her on a ticket. Cf. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005) (A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission.).

Contrary to Minard's suggestion, there is no recognized continuing probable cause doctrine that gives a police officer unfettered discretion to repeatedly seize the same motorist who previously committed a completed traffic violation. Such is true even when the previously completed violation ended with the driver receiving a ticket for a violation different than the specific offense providing probable cause for the stop. Because "[a]uthority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed. *Rodriguez v. U.S.*, ___ U.S. ___; 135 S. Ct. 1609, 1614 (2015).

Although both *Rodriguez* and *Caballes*, dealt with the constitutionality of events occurring on a single traffic stop. *Rodriguez*, 135 S. Ct. at 1614; *Caballes*, 543 U.S. at 407. The Supreme Court's reasoning there is dispositive here. Considering, an officer needs probable cause to stop a motor vehicle for a traffic

14

violation, *Sanford*, 476 F.3d at 394, and a delay in the time of release after completing the mission is unlawful, *Caballes*, 543 U.S. at 407.  It naturally follows that once the first traffic stop completed sending Cruise on her merry way with a citation, the second stop immediately after was an unconstitutional seizure.

Remember, Minard concedes the basis for the second stop was Cruise being disrespectful as she drove from the first stop: not probable cause another traffic violation had occurred after release or reasonable suspicion to believe criminal activity was afoot.  Therefore, accepting the well-pleaded factual allegations as true and in a light most favorable to Cruise, the amend complaint raises a plausible claim that Minard violated clearly established constitutional rights under the Fourth Amendment.

### C. Qualified immunity does not shield Minard from liability because a reasonable officer would know he cannot stop a motor vehicle, just because the driver displays a symbolic gesture communicating disagreement.

1. *Standards of Review*

De novo review applies to the district court's decision on a motion under Rule 12(c) based on qualified immunity.  *Greer*, 884 F.3d at 314.  A court evaluating a claim of qualified immunity "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the

alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

2. *The contours of the First and Fourth Amendment were sufficiently clear that a reasonable official in Minard's position, would understand what he is doing violates those rights.*

Starting with the latter "clearly established" element of qualified immunity, the wealth of case law disclosed above should leave this Court little doubt that at the time of the occurrence, the ancient gesture of giving the middle finger—with no other allegations of wrongdoing—was clearly established under the First Amendment. This Court should also have little doubt that the contours of the right were sufficiently clear that a reasonable official would know he could not seize a motor vehicle and driver for symbolically displaying disagreement with receiving a ticket. Or as Minard puts it, stop a motor vehicle for driver disrespect.

The same is true of the Fourth Amendment claim. There is little doubt that at the time of the occurrence, there was also a clearly established constitutional right forbidding unlawful seizures and detentions that interfere with fundamental liberty interests. The contours of the Fourth Amendment were sufficiently clear that a reasonable official would know he violated the right by seizing a motor vehicle and driver, without probable cause of a traffic violation or reasonable suspicion of criminal activity. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.)

Regarding the former element "whether the plaintiff has alleged the deprivation of an actual constitutional right at all," there should be little doubt to this Court the outcome favors Cruise.  Viewing the factual allegations as true and in a light most favorable to Cruise, the amended complaint raises plausible claims that a reasonable official would have known his acts were outside the scope of his authority and violated the constitution.

Minard's argument that driver disrespect justified the second stop is not convincing.  If Minard were correct, the trepidation and attenuation in protections guaranteed by the Constitution would be eroded if police officers had the right to conduct traffic stops for driver disrespect.  Not to mention, it would be virtually impossible for a judicial officer to decide ticket responsibility under a disrespect standard.  Thus, this Court should hold that qualified immunity does not shield Minard from liability.

### D. Minard mischaracterizes the standard for substantive due process because "shocks the conscience" is only one part.

1. *Standards of Review*

As stated above, de novo review applies to the district court's decision on a motion under Rule 12(c), whether the complaint alleges violation of a clearly established constitutional right.  *Greer*, 884 F.3d at 314.  Where a particular Amendment provides an explicit textual source of constitutional protection against

17

a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims. *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

2. *Minard's retaliatory action by seizing Cruise's person and vehicle interfered with rights implicit in concepts of ordered liberty.*

Substantive due process secures the citizen against any arbitrary deprivation of his rights, whether relating to his life, his liberty, or his property. *Dent v. State of W. Va.*, 129 U.S. 114, 124 (1889). Although the high Court has been less than forthcoming defining the contours of substantive due process claims, it has stated "the Due Process Clause guarantees more than fair process, and the 'liberty' protected includes more than the absence of physical restraint." *Washington v. Glucksberg*, 521 US 702, 719 (1997) (internal quotations altered). Elaborating further "the Fourteenth Amendment forbids the government to infringe ... 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Id.* at 720-21.

Here, Minard concludes, without giving the reason that Cruise's "substantive due process claim fails for the same reasons her First and Fourth Amendment claims fail." **(Doc. 10, Page ID 80.)** As articulated above, however, Minard is incorrect because accepting the factual allegations as true and in a light most

18

favorable to Cruise, the amended complaint does raise plausible claims under the First and Fourth Amendment.  Moving forward from there, there are three reasons this Court should not dismiss Cruise's substantive due process claim.

First, at the pleading stage Cruise is free to state as many separate claims or defenses as it has regardless of consistency, which she did.  Fed. R. Civ. P. 8(d)(3).  Which brings us to the second point.  This Court should not reach plausibility of the substantive due process claim unless and until, it finds Cruise's First and Fourth Amendment claims fail.  *Lewis*, 523 U.S. at 843 (Substantive due process analysis is therefore inappropriate in this case only if respondents' claim is "covered by" the Fourth Amendment.).

Third and last, hypothetically assuming the first-two reasons given are not in the way, Minard might have a viable argument that Minard's acts do not rise to the level of a malicious or sadistic intent to cause harm, except for the disjunctive word "or."  Substantive due process prevents the government from engaging in conduct that "shocks the conscience" or interferes with rights "implicit in the concept of ordered liberty." *U.S. v. Salerno*, 481 U.S. 739, 746 (1987) (citations omitted).  The language used by the high Court in *Salerno*, makes clear that there are two separate and independent conceptual violations of substantive due process because as phrased, the word "or" is expressing a choice between two mutually

exclusive possibilities.  See *Loughrin v. U.S.*, ___ U.S. ___; 134 S. Ct. 2384, 2390 (2014) (the word "or" is almost always disjunctive).

The amended complaint pleads Minard's second traffic stop seizing Cruise's person and motor vehicle was an arbitrary abuse of state power that served no government interest but did interfere with fundamental rights implicit in the concept of ordered liberty.  **(Doc. 6, Page ID 38 ¶ 38.)**  Meaning, Cruise did not plead substantive due process under the shocks the conscience concept but rather, the latter violation of fundamental rights implicit in the concept of ordered liberty.

There is no doubt that Minard's second traffic stop violated "constitutionally guaranteed personal immunities … so rooted in the traditions and conscience of our people as to be ranked as fundamental … or are implicit in the concept of ordered liberty."  *Rochin v. California*, 342 U.S. 165, 169 (1952).  There is unquestionably, a constitutionally protected fundamental right to freedom of movement, see *Kolender v. Lawson*, 461 U.S. 352, 358 (1983), and "the liberty protected includes more than the absence of physical restraint."  *Glucksberg*, 521 U.S. at 719.  From the viewpoint stated, Minard did not have to sadistically or maliciously intend to cause Cruise physical harm to violate substantive due process because if that were the case, the rudimentary principle of the clause would not be "to prevent governmental power from being used for purposes of oppression." *Daniels v. Williams*, 474 U.S. 327, 331 (1986).

Here, Minard may not have intended to maliciously and sadistically cause Cruise serious physical injury, but he did intend to interfere with fundamental liberty interests by stopping her the second time to impose tyranny under the auspice of a policeman's badge.  Enough said.

## V. Conclusion

It is difficult to fathom how driver disrespect can justify a traffic stop.  It is also nonsensical for a police officer to believe he is acting within the scope of his authority by seizing a motor vehicle and driver, without probable cause or reasonable suspicion.  Finally Minard's de minimus argument is meritless.  In a §1983 action, the respondent is liable for all damages that naturally flow from the unconstitutional act.  Cruise suffered property damage and physical injury from a motor vehicle accident accruing because Minard retaliated against the exercise of clearly established protected rights.  To date, economic damages alone exceed $158,900.71.  That amount is not de minimus by any stretch of the imagination.

Respectfully submitted,

  /s/ Hammad A. Khan
Hammad A. Khan (P80039)
Counsel for Plaintiff
1 Ajax Drive, Ste 101
Madison Heights, MI 48071
Dated: July 3, 2018      P: (248) 951-8111
hkhan@blackstonelawpllc.com

21

## Certificate of Service

The undersigned affirms that on the date set forth below, he electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing (NEF) to ECF participant parties or attorney(s) of record.

The undersigned further affirms that he mailed by first class, postage paid United States Mail the foregoing to the following non-ECF participant(s): None.

Respectfully Submitted,

    /s/ Hammad A. Khan
Blackstone Law, PLLC
Hammad A. Khan (P80039)
1 Ajax Drive, Ste 101
Madison Heights, MI 48071
P: (248) 670-0077

July 3, 2018                                    hkhan@blackstonelawpllc.com