```
                 UNITED STATES DISTRICT COURT
                 EASTERN DISTRICT OF MICHIGAN
                       SOUTHERN DIVISION
```

**DEBRA LEE CRUISE-GULYAS,**

       Plaintiff,

                                     **HONORABLE PAUL D. BORMAN**

  v.                           **No. 18-11169**

**MATTHEW WAYNE MINARD,**
**individually and in his**
**official capacity as a Taylor**
**Police Officer,**

       Defendant.
_____/

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

**Friday, September 21, 2018**

**2:38 p.m.**

APPEARANCES:

   For the Plaintiff:        **HAMMAD A. KHAN**
                                   Blackstone Law, PLLC
                                   One Ajax Drive
                                   Suite 101
                                   Madison Heights, Michigan
                                     48071
                                   (248) 951-8111

   For the Defendant:        **MARK W. PEYSER**
                                   Howard & Howard Attorneys,
                                     PLLC
                                   450 W. Fourth Street
                                   Royal Oak, Michigan  48067
                                   (248) 723-0356

               <u>To Obtain Certified Transcript, Contact:</u>
            Leann S. Lizza, CSR-3746, RPR, CRR, RMR, CRC
                        (313) 234-2608

|  |  |  |
|---|---|---|
| 1 | **TABLE OF CONTENTS** | |
| 2 | <u>Motion Hearing</u> | <u>Page</u> |
| 3 | Argument by Mr. Peyser | 3 |
| 4 | Argument by Mr. Khan | 11 |
| 5 | Further argument by Mr. Peyser | 13 |
| 6 | Ruling by the Court | 14 |
| 7 | | |
| 8 | | |
| 9 | <u>Exhibits</u>: | <u>Received</u> |
| 10 | (None offered.) | |

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**   3

|    |                                                                  |
|----|------------------------------------------------------------------|
| 1  |                             September 21, 2018                   |
| 2  |                             Detroit, Michigan                    |
| 3  |                        -   -   -                                 |
| 4  |    (Call to order of the Court, 2:38 p.m.)                       |
| 5  |    (Court and Counsel present.)                                  |
| 6  |         THE COURT CLERK:  Now calling the case of *Debra Lee*    |
| 7  | *Cruise-Gulyas versus Matthew James Minard* [sic], Case          |
| 8  | Number 18-11169.                                                 |
| 9  |         THE COURT:  Okay.  Parties please identify themselves    |
| 10 | for the record beginning with the plaintiffs.                    |
| 11 |         MR. KHAN:  Good afternoon, Your Honor.  May it please    |
| 12 | the Court, attorney Hammad Khan on behalf of Debra Lee           |
| 13 | Cruise-Gulyas.                                                   |
| 14 |         THE COURT:  Okay.                                        |
| 15 |         MR. PEYSER:  Your Honor, my name is Mark Peyser,         |
| 16 | P-E-Y-S-E-R, with the law firm of Howard and Howard.  I'm        |
| 17 | appearing on behalf of Defendant Matthew Wayne Minard.           |
| 18 |         THE COURT:  Okay. Very good. Have a seat. Let me        |
| 19 | just spread this out.                                            |
| 20 |         Okay.  This is defendant's motion, so Mr. Peyser,       |
| 21 | please proceed.  Come to the podium.  Speak slowly and --        |
| 22 |         MR. PEYSER:  Thank you, Judge.                           |
| 23 |         Let me first state, Your Honor, that I've been doing     |
| 24 | this 35 years and I don't think I've ever had the pleasure to    |
| 25 | appear in front of you before.                                   |

**CRUISE-GULYAS v. MINARD, 18-11169**

**ARGUMENT BY MR. PEYSER**

4

```
 1              THE COURT:  Okay.  Well, glad to have you here.
 2              MR. PEYSER:  Yeah, I'm glad to be here, Judge.  And
 3   Your Honor, I'll be quite honest with you, I know my associate,
 4   Mr. John Karmo, who couldn't be here.  He's ill, believe it or
 5   not.
 6              THE COURT:  Okay.
 7              MR. PEYSER:  He's been working with me on this case
 8   and has briefed me and indicated that Your Honor is very
 9   prepared and I don't need to regurgitate what's in the
10   papers --
11              THE COURT:  Let me ask you a question.
12              MR. PEYSER:  Sure.
13              THE COURT:  I have a document called Case Detail which
14   says that in this case the plaintiff, original charge was
15   impeded traffic, I-M-P-E-D-E-D.  And the disposition was
16   judgment rendered on that charge.  Is that correct?
17              MR. PEYSER:  That is correct, Your Honor.  I have with
18   me, it's not part of the record --
19              THE COURT:  Right.
20              MR. PEYSER:  -- because it's judgment on the
21   pleadings.  But what's interesting about this case, and I could
22   present it to you, I have extra copies, is that there are two
23   tickets that were issued.  They both have the same ticket
24   number.  One is a speeding charge and one is the impeding
25   charge.  But when you go to the district court's docket sheet,
```

1  it reflects the charge is impeding and it reflects --
2          THE COURT: That's all I have before me.
3          MR. PEYSER: And I have an actual copy if you'd like
4  to see an abstract.
5          THE COURT: We'll talk about it after.
6          MR. PEYSER: Sure.
7          THE COURT: Right now we're dealing with what I have
8  which is the case detail and that's where it's at.
9          So basically the plaintiff was pulled over and given a
10 ticket for impeded which was less than the offense that could
11 have been given but she was given a ticket. The officer got
12 back in his car. She drove away, flipped him the bird and then
13 he pulled her over and gave her a more severe ticket which went
14 somewhere but it was not, in terms of the record before me,
15 something that's on this case.
16         So let me just ask this question, because there's a
17 Second Circuit opinion and a Sixth Circuit opinion that I think
18 are important. I recognize we're not in the Second Circuit,
19 but this is an opinion on *Swartz*, S-W-A-R-T-Z, *versus Insogna*,
20 I-N-S-O-G-N-A, 704 F.3d 105. And it says "Perhaps there is a
21 police officer somewhere who would interpret an automobile
22 passenger's giving him the finger as a signal of distress
23 creating a suspicion that something occurring in the automobile
24 warranted investigation." And then it says "But the nearly
25 universal recognition that this gesture is an insult deprives

such an interpretation of reasonableness.  The ancient gesture of insult is not the basis for a reasonable suspicion of a traffic violation of impending criminal activity."

Sixth Circuit opinion in 2013, 549 Fed Appendix 309, *Wilson versus Martin*.  Opinion written by Judge Kethledge where City of Lima, Ohio, or Lima, Ohio, arrested and detained an 11-year-old girl after she extended both middle fingers toward two police officers and she brought a 14 -- 42 U.S.C. 1983 lawsuit claiming violations of her First and Fourth Amendment rights.  And Judge Kethledge, writing for opinion, "The raising of the middle fingers was crude not criminal and the officers were patently without probable cause to arrest her for that."

So how do we get around those cases where the First Amendment seems to have protected individuals from imprudent but not criminal acts of flipping the bird, we'll call that?

MR. PEYSER:  Okay.  We'll use that term, Judge.

THE COURT:  Okay.

MR. PEYSER:  The cases that were cited by the plaintiff and I think the two that the Court just referenced indicate that if someone exercises that freedom to use that gesture and that gesture in and of itself is the basis for an arrest or a stop absent any other circumstances seems to favor the expression or the exercise of First Amendment freedom-of-speech rights.

THE COURT:  But here the initial stop concluded,

1  ticket for impeding is given, she drives off, he drives off,
2  she flips the bird, he pulls her over again and we're here.
3         MR. PEYSER: That's correct. And if you were to look
4  at their complaint, whether it's the original or amended
5  complaint, Your Honor, they talk about this second stop was
6  almost immediate, it occurred in less than 100 yards from the
7  original stop. And what we've cited in our brief, and we did a
8  lot of research on this, Your Honor, there is no specific case
9  law that addresses this kind of factual scenario that it talks
10 about does a police officer have discretion to change his mind
11 in the event there was some sort of act of disrespect shown
12 towards him in the context of this type of stop. And we even
13 draw an analogy, as you may remember reading, Your Honor, if
14 you were to sentence someone on a criminal matter before you to
15 at guidelines or less than guidelines and they were to exercise
16 the same gesture to the Court, would you have the ability to
17 change your mind, exercise your discretion, sentence it to a
18 longer term.
19         THE COURT: In a Sixth Circuit case called *Greene*,
20 G-R-E-E-N-E, *versus Barber*, 310 F.3d 889, Judge Nelson writing
21 for the panel, in that case it wasn't flipping the bird. It
22 was using words saying, you know, that you are a person saying
23 to the officer you're really being A and then, dot, dot, and
24 then H-O-L-E, and then when the officer said You can't do that
25 in the police headquarters, and then the plaintiff said, Well,

1   if that's how you feel, you're really stupid.  And then the
2   officer said You're under arrest.  And Judge Nelson said that
3   characterization of Lieutenant Barber as an A, dash, dash,
4   H-O-L-E was not egregious enough to trigger application of
5   fighting words doctrine, and the right not to be arrested for
6   insulting a police officer was clearly established in March of
7   1997.
8         So, you know, there has been some precedent.  That is
9   a published case.  It seems to me like the flip of the bird is
10  similar to that or maybe even less but I'm not going to argue
11  which one is more to the officer as being improper, but under
12  precedent that you can't just make a -- the compelling reason
13  why the state can make a four-letter word or a flip of the bird
14  a criminal offense like in the case of *Cohen versus California*,
15  C-O-H-E N, 403 U.S. 15, a 1971 case, the words of expression
16  were F, dash, dash, K you and the Supreme Court says that
17  that's protected under the First Amendment.
18        So where do we go here with regard to what happened
19  here?  The police officer gave the ticket, concluded and then a
20  whole new matter began, didn't it?  You're saying it's the same
21  thing but the stop had been completed.  The officer's basis for
22  the stop had been completed.  And the only basis for the second
23  stop was the insult to the officer that he then went after the
24  plaintiff and pulled her over a second time.  Help me out of
25  this hole that the Supreme Court and the Sixth Circuit have put

1  around my ability to consider other issues other than the
2  constitutional issues in this 1983 case.
3      MR. PEYSER:  Okay, Your Honor.  If -- all the case law
4  that we cited in our brief, whether it's the original or the
5  reply brief, talks about you can't just generalize these
6  factual scenarios and come with a generality in terms of what
7  is or is not clearly established.  It's really a fact-specific
8  case-by-case analysis.
9      THE COURT:  Exactly.
10     MR. PEYSER:  And I think we all agree that.  So you
11 have to look at what happened here.  And you're right; she was
12 pulled over for speeding.  And you're right; he gave her a
13 reduced ticket of impeding.  And you're right; after that was
14 over she started proceeding away.  And as she proceeded away,
15 she made the gesture that she did.  That's undisputed.  And
16 then he initiates a stop which we characterize as a
17 continuation of this stop --
18     THE COURT:  How can that be the continuation of the
19 stop when the purpose of the stop was to ticket her for a
20 violation?  He gave her a ticket for a violation, and that was
21 over.
22     MR. PEYSER:  Because he changed his mind as to the
23 discretion that he was allowed to exercise.
24     THE COURT:  What caused him to change his mind?  The
25 bird.

1  MR. PEYSER: No doubt the gesture helped -- it
2  probably was the foundation for the change of his mind.
3  THE COURT: Of course.
4  MR. PEYSER: I can't argue around that, Your Honor.
5  THE COURT: Right.
6  MR. PEYSER: I'm not going to insult this court by
7  trying to pull the wool over your eyes.
8  THE COURT: Right.
9  MR. PEYSER: But there is no case law specific to this
10 type of fact pattern that says that an officer can't change his
11 mind, change and exercise his discretion under circumstances of
12 this. Whereas some of the cases you've cited that is the
13 gesture was made and that was the basis for the arrest, that
14 was the basis for the charge. This is uniquely different
15 because that's not the basis for the charge.
16 THE COURT: It was the basis for the second pullover.
17 MR. PEYSER: It was the basis to amend the ticket to
18 the original charge of her speeding. And for whatever reason,
19 and I still don't know, Your Honor, because when you talked
20 about the court's underlying docket, it went down as impeding.
21 She pled responsible to impeding. We've got all kinds of
22 arguments and why certain counts are dismissed because there is
23 probable cause and those are one of the elements that's
24 based -- there has to be an absence of for certain of these
25 counts. But as to the fact pattern, there's nothing that puts

1  him on notice. It was not a clearly established right under
2  our law in the Sixth Circuit or even from this court, Your
3  Honor. We're not aware of any case that says you do not have
4  the right to change your mind and change your discretion. And
5  that's what we're arguing here.
6           THE COURT: Okay. Thank you. You're the moving
7  party, so I'll call you back after.
8           MR. PEYSER: Absolutely. And I don't want to belabor
9  the point, Your Honor, because we wrote some pretty extensive
10 briefs on -- and there's a lot of subparts that I know that
11 you've read. But that's the essence of what we're arguing
12 here, and if it's not clearly established, there's not a claim.
13 If there's probable cause, there's not a claim. If there's no
14 causal claim, there's not a claim. And these are some of the
15 key points that we made in our brief, Judge.
16          THE COURT: Thank you.
17          MR. PEYSER: Thank you.
18          THE COURT: Mr. Khan, please.
19          MR. KHAN: Your Honor, one word, retaliation. This
20 Court got all the facts correct, Your Honor. My client,
21 Miss Debra Cruise, Your Honor, she got stopped for speeding,
22 the first initial stop. She got stopped for speeding. The
23 officer gave her a ticket for impeding traffic which, of
24 course, this court knows is a zero-point violation. It's a
25 civil infraction, Your Honor.

1  THE COURT: Please speak a little slower. That will
2  help Mrs. Lizza. She's the court reporter. She has the
3  toughest job. We're not in a rush. Thank you, sir.
4  MR. KHAN: Thank you, Your Honor. Sorry about that.
5  THE COURT: Okay.
6  MR. KHAN: Your Honor, as you just stated, my client
7  was dissatisfied, let's say that. As she was driving away --
8  let's back up. After the officer hands my client the civil
9  infraction, impeding traffic ticket, she was free to go. He
10 said, Take care. Have a good day, ma'am. And by the way, we
11 have a video, Your Honor. We have an audio and a videotape
12 from the City of Taylor right now if this court would like to
13 take a couple minutes to review that.
14 But she was free to leave. That's the key here. The
15 stop had concluded, as the Court just mentioned. As she's
16 driving away, she gave him the bird. She rolls down the
17 driver's side window. She gave him the bird. He pulls her
18 over. Continuation of the stop, that's not a logic that I
19 follow, Your Honor, because with that logic when does a
20 continuation end? Is it when she goes to bed and wakes up the
21 next day, she looks up the officer in a disrespectful way, does
22 he have probable cause or reasonable suspicion to pull her over
23 again?
24 It doesn't make any sense, Your Honor. Once the
25 officer says to my client, Miss Debra Lee Cruise, have a good

1   night, ma'am, or have a good day, whichever the case may be,
2   the stop concluded, the first stop.  Retaliation, Your Honor.
3   That's number one.
4           Your Honor, it wasn't fighting words as they're in
5   separate vehicles.  She was pulling away.  We obviously
6   respectfully oppose defendant's motion because driver's
7   disrespect is not constitutional reason for the officer to stop
8   the motor vehicle.
9           There's really the fundamental issue, Your Honor, of
10  the First Amendment, freedom of speech, Your Honor.  That was
11  really the issue.  And, of course, there's the Fourth Amendment
12  issue as well, Your Honor.  I'm sure the Court has read our
13  response to the motion.  Is there any questions, Your Honor?
14          THE COURT:  No.  No, I'm all set.  Thank you.
15          MR. KHAN:  Thank you, Your Honor.
16          THE COURT:  Okay.  Mr. Peyser, do you wish to reply?
17          MR. PEYSER:  Just real brief, Your Honor.
18          As relates to the Fourth Amendment claim which is
19  alleging unlawful detention, seizure, it lacks merit because
20  there is probable cause existed to initiate the traffic stop
21  which we, again, claim is a continuation of.  And case law is
22  clear on that.
23          And we also talk about qualified immunity in this
24  case, Your Honor.  It's one of our arguments in our brief and
25  how my officer is entitled to that immunity.  And under the

1  qualified immunity you have to have a clearly established right
2  and that right has to be violated and if the right isn't
3  clearly established and that's the issue of whether or not an
4  officer has discretion to change his mind based upon the
5  conduct of a citizen, if that's not clearly established, then,
6  of course, he's entitled to qualified immunity.
7           And, again, Your Honor, I just want to point out and
8  emphasize that the cases I think the Court's eluding to, that
9  you went over, there were specific actions taken by the police,
10 by way of initiating a charge, effectuating arrest as a result
11 of the expression given the gesture.  First, this was a
12 legitimate traffic stop --
13          THE COURT:  The initial one was.
14          MR. PEYSER:  Yes, which she pled responsible to, okay?
15 But initially she was stopped because she was doing 58 in a 45.
16 That's what the --
17          THE COURT:  No question that was a proper stop.
18          MR. PEYSER:  That's right.  That's right.  And in
19 fact, we interpreted their complaint to read that because they
20 said she was pulled over for speeding and to me it's an
21 admission that she was speeding.  But regardless of the
22 underlying impeding speeding, it's still a lawful stop, still
23 probable cause, and for everything I said earlier as well as in
24 our brief, Your Honor, we'll stand by that.
25          THE COURT:  So I'm going to deny defendant's motion

**FURTHER ARGUMENT BY MR. PEYSER** 15

1 and I'm going to urge the parties to talk to each other because
2 I think that based on the cases, all the cases that I've read,
3 there is not a clearly established right after a stop has ended
4 and the person is driving away and the driving away there was
5 nothing illegal about that.  So I'm denying the motion to
6 dismiss and urging you all to talk together.  Thank you.
7        MR. PEYSER:  Okay, Your Honor.  Thank you.
8        MR. KHAN:  Thank you, Your Honor.
9        THE COURT CLERK:  Court is in recess.
10    (Proceedings concluded, 2:59 p.m.)
11                -  -  -
12          CERTIFICATION OF REPORTER
13
14   I, Leann S. Lizza, do hereby certify that the above-entitled
15 matter was taken before me at the time and place hereinbefore
16 set forth; that the proceedings were duly recorded by me
17 stenographically and reduced to computer transcription; that
18 this is a true, full and correct transcript of my stenographic
19 notes so taken; and that I am not related to, nor of counsel to
20 either party, nor interested in the event of this cause.
21
22
23 S/Leann S. Lizza_____  9-27-2018
24 Leann S. Lizza, CSR-3746, RPR, CRR, RMR          Date
25

**CRUISE-GULYAS v. MINARD, 18-11169**